UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROBERT AINBINDER, CECILIA MACKIE,

                Plaintiffs,

-against-

**ORDER**
10-CV-5270 (SJF)(AKT)

THE MONEY CENTER FINANCIAL GROUP, INC.,
NATHAN HINGSON, MICHAEL DEMCHAR,
MICHAEL DESPOSITO, MGM CAPITAL,
MARGARET DESPOSITO, MICHAEL HARMON,

                Defendants.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★ MAR 24 2014 ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

On November 16, 2010, *pro se* plaintiffs Robert Ainbinder ("Ainbinder") and Cecilia Mackie ("Mackie") (collectively, "plaintiffs") commenced this action against defendants The Money Center Financial Group, Inc. ("The Money Center"), Nathan Hingson ("Hingson"), Michael Demchar ("Demchar"), Michael Desposito ("Michael Desposito"), Margaret Desposito ("Margaret Desposito"), MGM Capital ("MGM"), and Michael Harmon ("Harmon") for breach of contract, unjust enrichment, conversion, damages to reputation, emotional distress, conspiracy, and conspiracy to commit fraud. [Docket Entry No. 1]. On March 25, 2013, a default judgment was entered against The Money Center. [Docket Entry No. 100]. On February 11, 2014, a default judgment was entered against Hingson. [Docket Entry No. 123]. The Court now considers plaintiffs' claims for damages against The Money Center and Hingson based upon breach of contract and damage to reputation.

I.   Background[1]

   A.   Factual Background

In January 2009, Ainbinder was contacted by a friend about a business venture with Michael Desposito who was seeking commercial real estate projects in need of funding. (Compl. ¶ 12). Ainbinder's business was to facilitate the funding for commercial real estate projects between lenders and borrowers. (*Id.* ¶ 13).

   1. Mackie Project

The first project submitted by Ainbinder to Michael Desposito was for a property located in Williamsburg, Brooklyn, to be developed by Mackie ("Mackie Project"). (*Id.* ¶ 16). On February 18, 2009, Michael Desposito forwarded to Ainbinder a term sheet for the Mackie Project from The Money Center, and signed by The Money Center's chief executive officer, Hingson ("Mackie Project Term Sheet"). (*Id.* ¶ 18). The Mackie Project Term Sheet, dated January 14, 2009, provided for a four million five hundred thousand dollars ($4,500,00.00) loan. (*Id.* ¶ 17; Mackie Project Term Sheet, Compl. Ex. B). Mackie submitted a thirty thousand dollar ($30,000.00) "consulting" fee to The Money Center/Hingson. (*Id.* ¶ 19). On February 19, 2009, Mackie received a letter from The Money Center in which it committed to fund the Mackie Project ("Mackie Project Commitment Letter").[2] (Compl. ¶ 20; Mackie Project Commitment

---

[1]   The facts are taken from the complaint and the exhibits attached to the complaint.

[2]   The Mackie Project Commitment Letter requires the borrower to pay a thirty thousand dollar ($30,000.00) "consulting retainer," "earned upon acceptance of loan commitment." (Mackie Project Commitment Letter, Compl. Ex. C, at 2). The Mackie Project Term Sheet, on the other hand, provides for a fifty thousand dollar ($50,000.00) "consulting retainer" due "upon execution of the Conditional Loan Commitment." (Mackie Project Term Sheet, Compl. Ex. B, at 1). While plaintiffs contend that "[o]ne of the tenets of the term sheet was that Mackie submit a fee of $30,000 to The Money Center/Nathan Hingson," there is no mention of a thirty thousand dollar ($30,000.00) fee anywhere in the Mackie Project Term Sheet. (Compl. ¶ 19).

2

Letter, Compl. Ex. C). The Mackie Project Commitment Letter provides that "Palm Beach Management, LLC has an agreement with the borrower for a 1% fee to be paid at closing." (Mackie Project Commitment Letter, at 6). Despite Mackie's repeated requests to either close the deal or refund her "consulting" fee, the Money Center did neither. (Compl. ¶¶ 25-26).

2. Caflo Project

On March 16, 2009, based upon an Ainbinder referral, The Money Center sent Caflo Real Estate Development, LLC ("Caflo") a term sheet signed by Hingson ("Caflo Project Term Sheet") for a fifty-five million five hundred thousand dollar ($55,500,000.00) loan for the acquisition and development of property located in Bronx, New York (the "Caflo Project"). (Caflo Project Term Sheet, Compl. Ex. F). On April 27, 2009, The Money Center sent Caflo a letter in which it committed to fund the Caflo Project with a sixty-five million dollar ($65,000,000.00) loan ("Caflo Project Commitment Letter"). (Compl. ¶ 37; Caflo Project Commitment Letter, Compl. Ex. G). The Calfo Project Commitment Letter provides for "a 2.5% fee for the brokers involved in the transaction to be paid at closing," which "are identified as Palm Beach Management, LLC and MGM Capital, Inc." (Caflo Project Commitment Letter, at 6). Notwithstanding receiving twenty-five thousand dollars ($25,000.00) in advance fees from Caflo, Hingson walked away from the Caflo Project. (Compl. ¶¶ 38-39).

B. Procedural History

On August 20, 2012, plaintiffs moved for default judgment against The Money Center. [Docket Entry No. 57]. On February 28, 2013, Magistrate Judge A. Kathleen Tomlinson issued a report and recommendation ("February 2013 Report") that: (1) default judgment be entered against The Money Center on plaintiffs' claims for breach of contract and damage to reputation; and (2) the calculation of damages against The Money Center be deferred until the case is

resolved against Hingson. [Docket Entry No. 95]. On March 25, 2013, this Court adopted the February 2013 Report in its entirety, and entered a default judgment against The Money Center. [Docket Entry No. 100].

On March 1, 2013, plaintiffs moved for default judgment against Harmon, Margaret Desposito, and MGM. [Docket Entry Nos. 97-98]. On January 2, 2014, Magistrate Judge Tomlinson issued a report and recommendation ("January 2014 Report") that: (1) plaintiffs' motions for default judgment against Harmon, Margaret Desposito, and MGM be denied, without prejudice; and (2) plaintiffs be granted thirty (30) days to amend their complaint. [Docket Entry No. 115]. On January 23, 2014, this Court adopted the January 2014 Report in its entirety, denying plaintiffs' motions for default judgment against Harmon, Margaret Desposito, and MGM, and granting plaintiffs thirty (30) days to amend their complaint ("January 23, 2014 Order"). [Docket Entry No. 121].

On January 10, 2014, this Court ordered Hingson to show cause why a default judgment should not be entered against him for his repeated failure to appear at conferences or otherwise comply with the orders of Magistrate Judge Tomlinson. [Docket Entry No. 117]. On February 11, 2014, this Court entered a default judgment against Hingson. [Docket Entry No. 123].

On February 11, 2014, plaintiffs withdrew their remaining claims against Demchar, Michael Desposito, MGM, Margaret Desposito, and Harmon. [Docket Entry No. 123].

1. Defendant Harmon

On February 21, 2014, Mackie filed a motion to reinstate Harmon as a defendant and to "reargue" the January 23, 2014 Order. [Docket Entry No. 124]. Mackie's application is granted insofar as it seeks reargument. Mackie contends that plaintiffs "simply mislabeled the cause of action" as conspiracy to commit fraud "but for all intents and purposes the complaint has the

elements necessary for an allegation of direct fraud." [Docket Entry No. 124]. However, as correctly concluded by Magistrate Judge Tomlinson in the January 2014 Report, and as adopted in the January 23, 2014 Order, plaintiffs' complaint does not adequately allege a fraud claim against Harmon. (January 2014 Report, at 15). Therefore, and upon reargument, this Court adheres to its original determination.

II. Discussion

A. Legal Standard Governing Defaults

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The determination of a motion for default judgment is left to the sound discretion of the district court. *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)). Pursuant to its "inherent power to manage its caseload," the Court may "*sua sponte* enter a default judgment against a litigant who has failed to prosecute [its] case with reasonable diligence and who has not complied with the Court's rules of procedure." *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Chinatown Carting Corp.*, 06-cv-5967, 2008 WL 5111108, at *3 (E.D.N.Y. Dec. 4, 2008) (quoting *Singh v. Jackson*, No. 86-CV-2668, 1986 WL 12514, at *1 (S.D.N.Y. Oct. 31, 1986)); *see also Singapore Tone Teik PTE Ltd. v. Coppola*, No. 04-CV-3440, 2007 WL 2375796, at *4 (E.D.N.Y. Aug. 17, 2007).

1. Liability

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 112 (E.D.N.Y. 2011); *see*

*also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). A default judgment entered on the well pleaded allegations in the complaint establishes a defendant's liability. *See Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995); *Circuito Cerrado*, 804 F. Supp. 2d at 112.

2. Damages

While a party's default is deemed to constitute concession of all well pleaded allegations of liability, it is not considered admission of damages. *Greyhound*, 973 F.2d at 158. Therefore, once a party's default is established, damages must still be proven. *Gutman v. Klein*, No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))). To win a claim of damages, plaintiffs must provide adequate support for the relief they seek. *See Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) ("The burden is on the plaintiff to establish its entitlement to recovery." (citing *Greyhound*, 973 F.2d at 158)).

B. Breach of Contract Claims

Default judgment was entered against The Money Center and Hingson on plaintiffs' breach of contract claim. Under New York law,[3] successful plaintiffs in a breach of contract action are entitled to compensatory damages that "'put the plaintiff in the same economic

---

[3] As set forth in the February 2013 Report and adopted by this Court in the March 25, 2013 order, New York law applies to this action. *See* February 2013 Report, at 13 n.4.

position he would have been in had the defendant fulfilled the contract.'" *F.D.I.C. v. Drysdale*, No. 10-CV-4778, 2013 WL 5965723, at *4 (E.D.N.Y. Nov. 7, 2013) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)). Furthermore, "in an action for breach of contract, a plaintiff is entitled to recover lost profits only if he can establish both the existence *and* amount of such damages with reasonable certainty." *Schonfield v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (emphasis added).

Under the doctrine of joint and several liability, when two (2) or more defendants act together to cause an injury, each defendant is liable to the victim for the total damages. *See Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718 (2d Cir. 1978); *Newman v. Mor*, No. 08 CV 658, 2009 WL 890552 at *8 (E.D.N.Y. Mar. 31, 2009) (finding individual and corporate defendants jointly and severally liable to plaintiff for full amount of damages for breach of contract). As the Caflo and Mackie Project Commitment Letters are on The Money Center letterhead and provide for Hingson, as president and CEO, to sign on behalf of The Money Center, The Money Center and Hingson are jointly and severally liable for damages on plaintiffs' breach of contract claims.

1. Ainbinder's Damages

Ainbinder alleges that he "is entitled to $1.8 million in fees as a result of the commitments to Mackie and Caflo." Compl. ¶ 40. Specifically, Ainbinder "demands Judgment in the amount of $45,000, a 1% fee on the funding commitment made by The Money Center" for the Mackie Project. Affirmation of Robert Ainbinder and Cecilia Mackie for Default Judgment ("Pls.' Aff.") [Docket Entry No. 57], ¶ 8. The Mackie Project Commitment Letter provides that "Palm Beach Management, LLC has an agreement with the borrower for a 1% fee to be paid at closing." Mackie Project Commitment Letter, at 6. Given that The Money Center and Hingson caused the loan not to close, The Money Center and Hingson could be held liable upon the

Mackie Project Commitment Letter for ensuing damages. However, Ainbinder has failed to submit proof that he is entitled to such damages. At best, the Mackie Project Commitment Letter establishes that Palm Beach Management, LLC, which is not a party to this action, is entitled to a forty-five thousand dollar ($45,000.00) fee.

Apart from the fee for the Mackie Project, Ainbinder offers no explanation to support his allegation that he "is entitled to $1.8 million in fees as a result of the commitments to Mackie and Caflo." Compl. ¶ 40. It follows that the remaining damages to which Ainbinder claims he is entitled stem from the Caflo Project. The Caflo Project Commitment Letter provides for "a 2.5% fee for the brokers involved in the transaction to be paid at closing," which "are identified as Palm Beach Management, LLC and MGM Capital, Inc." Caflo Project Commitment Letter, at 6. As with the Mackie Project, The Money Center and Hingson could be held liable under the Caflo Project Commitment Letter for preventing the closing of the loan. However, as with the Mackie Project Commitment Letter, the Calfo Project Commitment Letter entitles Palm Beach Management, LLC, and not Ainbinder, to a two and one-half percent (2.5%) fee. Accordingly, Ainbinder has failed to adequately support his claims for damages.

2. Mackie's Damages

Mackie alleges that she is entitled to six hundred eighty-seven thousand four hundred one dollars ($687,401.00) in damages.[4] Compl. ¶¶ 34, 48. Mackie claims that the "total out-of-

---

[4] In the complaint, Mackie first states that she is entitled to a total of six hundred eighty-seven thousand four hundred one dollars ($687,401.00) in damages on her claims against Hingson and The Money Center, but later contends her damages amount to seven hundred seventeen thousand four hundred one dollars ($717,401.00). Compl. ¶¶ 34, 69(A). In the affirmation in support of the motion for default against The Money Center, Mackie claims six hundred fifty-seven thousand four hundred one dollars ($657,401.00) in damages. She also asserts that she was "defrauded of $30,000 in an up-front fee scheme," and "demands judgment in the amount of $30,000." Pls.' Aff. ¶¶ 2-4.

pocket damages include the up-front fees, architecture, engineering, demolition site work, legal and bank interest." Pls.' Aff. ¶ 5. Mackie asserts that she submitted a thirty thousand dollar ($30,000.00) fee to The Money Center/Hingson. Compl. ¶ 19. Plaintiffs have provided the January 2009 bank statement for The Money Center, which states that on January 23, 2009, The Money Center received a thirty thousand dollar ($30,000.00) transfer from Mackie Developments LLC. Letter from Ainbinder, dated July 18, 2013, with Attached Documentation [Docket Entry No. 110], at 5. Accordingly, Mackie is entitled to an award in the amount of thirty thousand dollars ($30,000.00).

Apart from the thirty thousand dollar ($30,000.00) "consulting" fee, Mackie has not submitted any evidence to support her claim other than the self-serving spreadsheets that list expenses for both her corporate and personal accounts. *See* Mackie Proof of Loss [Docket Entry No. 104]. However, Mackie has not provided any invoices or documented proof that the monies listed in the spreadsheets were spent in furtherance of the Mackie Project Commitment Letter upon which The Money Center/Hingson defaulted. Accordingly, Mackie has not established that she is entitled to any damages beyond the thirty thousand dollars ($30,000.00).

Mackie also asserts that had the Mackie Project been completed, the building would have been worth an estimated four million five hundred thousand dollars ($4,500,000.00), leaving her with over one million eight hundred fifty thousand dollars ($1,850,000.00) in equity. Mackie Letter, dated July 9, 2013 [Docket Entry No. 111]. This speculative projection of lost profits is insufficient to demonstrate the existence and amount of such damages with requisite certainty. *See Schonfield*, 218 F.3d at 172. Accordingly, Mackie is not entitled to the alleged lost profits.

### 3. Punitive Damages

Plaintiffs request punitive damages in their motion for default. Under New York law, "damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong, but [] punitive damages may be recoverable if necessary to vindicate a public right." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) (citations omitted). "[A] private party seeking to recover punitive damages [for a breach of contract] must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Racanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943, 612 N.Y.S.2d 339, 342 (1994). While the complaint specifically details the ways in which defendants' conduct targeted plaintiffs, plaintiffs do not show that defendants' conduct was "aimed at the public generally." *Id.* Accordingly, plaintiffs' request for punitive damages is denied.

### C.  Damage to Reputation Claim

Ainbinder seeks one million dollars ($1,000,000.00) in compensation for damage to his reputation. Compl. ¶ 56. The "damages to reputation" alleged by Ainbinder arise directly from plaintiffs' breach of contract claim. "[D]amages to reputation are generally not recoverable in a breach of contract action under New York law." *See Spithogianis v. Haj-Darwish*, No. 07 Civ. 4609, 2008 WL 82188, at *5 (S.D.N.Y. Jan. 7, 2008) (quoting *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005)); *see also Soto v. Fed. Express Corp.*, No. 06-CV-5413, 2008 WL 305017, at *7 (E.D.N.Y. Feb. 1, 2008) ("It is well-settled in New York that a claim for loss of reputation arising from a breach of contract is not actionable." (citing *Smith*, 419 F. Supp. 2d at 453)); *MacArthur Constr. Corp. v. Coleman*, 91 A.D.2d 906, 906, 457 N.Y.S.2d 530, 531

10

(1st Dep't 1983) (finding claim seeking damages for injury to reputation not actionable). However, damages to reputation may be available where a plaintiff can prove "specific business opportunities lost as a result of its diminished reputation." *Smith*, 419 F. Supp. 2d at 453 (quoting *I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F.Supp. 168, 175 (S.D.N.Y. 1994)); *see also Saxton Commc'n Grp., Ltd. v. Valassis Inserts, Inc.*, No 93-388, 1995 WL 679256, at *2 (S.D.N.Y. Nov. 15, 1995) ("Absent specific proof, damages for loss of reputation are too speculative to be recovered under contract law.").

The only evidence submitted by Ainbinder regarding damage to his reputation is a letter from Jurgen Wessley of Caflo, describing the fraud perpetuated by Hingson and The Money Center, and concluding it would be "most difficult to recommend Mr. Ainbinder to any of our associates." Caflo Recommendation Letter, Ainbinder Proof of Loss, Ex. D. This letter does not specifically enumerate damages suffered by Ainbinder as a result of his diminished reputation. Accordingly, Ainbinder is not entitled to damages on his loss of reputation claim.

D. Attorney's Fees, Costs, and Disbursements

Plaintiffs also request attorney's fees, costs, and disbursements. However, plaintiffs have provided no valuation or documentation to establish these costs. Accordingly, plaintiffs' request for attorney's fees, costs, and disbursements is denied.

III. Conclusion

In light of the default judgments entered against The Money Center and Hingson, and having considered the undisputed evidence presented by plaintiffs in support of their request for damages, the Court concludes that Ainbinder has failed to adequately support his claims for damages. Furthermore, the Court concludes that Mackie is entitled to an award of thirty thousand dollars ($30,000.00).

The Clerk of the Court shall enter a final judgment against The Money Center and Hingson, jointly and severally, in favor of Mackie in the amount of thirty thousand dollars ($30,000.00), and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: March 24, 2014
       Central Islip, New York